707 P.2d 416

**Don McDONALD and Alta McDonald, Husband and Wife, Plaintiffs-Respondents,**

v.

**SAFEWAY STORES, INC., Defendant-Appellant.**

**No. 15506.**

Supreme Court of Idaho.

Sept. 20, 1985.

Kevin F. Trainor, Twin Falls, for defendant-appellant.

John T. Lezamiz, Twin Falls, for plaintiffs-respondent.

HUNTLEY, Justice.

On April 17, 1981, at approximately 1:00 p.m., Alta McDonald entered a Twin Falls Safeway Store to make a purchase. As she walked down the aisle, her foot went out from under her and she fell, landing on her right hip.

Safeway had been conducting an ice cream demonstration since 10:00 a.m. that day. The substance that Mrs. McDonald slipped on was cream colored and appeared to be melted ice cream. As a result of the fall, Mrs. McDonald suffered severe injuries, requiring the replacement of a total hip transplant which she had received shortly before the fall. Thereafter, Alta McDonald brought the action for damages for injuries she had sustained, her husband joining with a claim for loss of consortium, services, care, comfort and companionship. A jury trial resulted in a special verdict finding Safeway's negligence at 100% and awarding Alta McDonald damages of $196,-000 and Donald McDonald damages of $35,-000.

Safeway first assigns error to the trial court's denial of its motion for summary judgment, asserting that reasonable minds could not differ on the issue of whether the actions of the Safeway employees were reasonable under the circumstances. For reasons which follow we conclude that the trial court properly denied the motion.

The complaint alleged, in part:
That on or about Friday, April 17, 1981, at some time prior to plaintiff Alta McDonald's arrival at said store defendant negligently caused and/or permitted a slippery substance consisting of melted ice cream to be deposited and to remain

on the floor of said store in a place allowed for the passage of plaintiff and other customers and shoppers.

.     .     .     .     .

That defendant knew or reasonably should have known that slippery substances, including ice cream, would foreseeably be dropped by passing shoppers and would accumulate on the floor and would endanger the safety of persons walking on the floor. The melted ice cream had been dispensed negligently by the defendant and had been negligenty allowed to remain on the floor for such a period of time immediately preceeding the accident that persons of ordinary prudence in the position of defendant knew or reasonably should have known of the same, and in the exercise of ordinary care would have remedied the same, prior to the happening of the accident herein alleged. In spite of defendant's notice of the presence of the melted ice cream on the floor, defendant negligently failed and omitted to remove the slippery substance within a reasonable time and failed to take any precaution to prevent injury to plaintiff and other invitees that foreseeably would be injured. The accident and injury hereinafter alleged were proximately caused by the negligence of defendant in causing the ice cream to be dispensed in a manner in which it was foreseeable that it would cause injury to others, and in causing and permitting the melted ice cream to remain on said floor and in failing to take reasonable precautions to prevent injury to plaintiff or to warn of the dangerous, unfit or unsafe conditions.

In its memorandum opinion denying Safeway's motion for summary judgment, the trial court stated:

In most supermarket slip and fall cases the plaintiff merely slips on an item or slick spot, the presence of which cannot be explained by anyone. Normally, the hazard exists during the normal business operation of the supermarket. Naturally, in those cases, the focus of attention is on the knowledge, actual or construc-tive, of the market that the hazard involved was on the floor.

Here we have a substantially different situation. Three seperate [sic] demos were being conducted on the premises of Safeway where food and napkins were being handed out to customers, including infants. This, giving plaintiff the benefit of all inferences, could have created an unreasonable risk of harm to people, even if the store had very efficient clean-up procedures. The mode of operation of the ice cream demo on a very busy Good Friday, combined with the abnormally large crowds and other demos, in and of itself could constitute an act of negligence on the part of defendant. It is also possible that Safeway should have taken super extraordinary supervisory precautions considering the mixture of ice cream and infants.

A jury question is presented regarding Safeway's negligence.

Safeway argues that the McDonalds' claim of negligence was based on two distinct theories, the first being that the Safeway employees had actual or constructive knowledge of the dangerous condition and failed to remedy it and the second being that by permitting three separate demonstrations on a busy sales day and furnishing ice cream to infants, Safeway created a foreseeable risk of harm to its customers. Safeway contends that it was entitled to an order of summary judgment on the negligence claim regardless of the theory upon which the McDonalds relied.

■ Summary judgment is appropriate only where the pleadings, depositions and affidavits show that there is no genuine issue of material fact. Further, all facts and inferences must be construed in favor of the party opposing the motion. I.R.C.P. 56(c); *Keller v. Holiday Inns, Inc.*, 107 Idaho 593, 691 P.2d 1208 (1984). Clearly, as to the first theory of negligence, the record before the trial court permitted the reasonable inference that Safeway knew or should have known of the dangerous condition, that it had sufficient time to remedy the situation and that in the exercise of

reasonable care, its employees should have cleaned the spill.

■ Safeway contends that Idaho law does not permit a plaintiff to recover under the second negligence theory, that is, negligent creation of a foreseeable risk of harm. That theory does not require that the owner or possessor of land have actual or constructive knowledge of the dangerous condition. Safeway insists that in dispensing with the knowledge requirement, the second theory is inconsistent with Idaho law regarding the liability of an owner or possessor of land for injuries to an invitee. In support of this proposition Safeway cites *Tommerup v. Albertson's, Inc.,* 101 Idaho 1, 607 P.2d 1055 (1980) wherein we stated:

> The law is well settled in this state that to hold an owner or possessor of land liable for injuries to an invitee caused by a dangerous condition existing on the land, it must be shown that the owner or occupier knew, or by the existence of reasonable care, should have known of the existence of the dangerous condition.

In *Tommerup,* the plaintiff-appellant Mrs. Tommerup, had slipped and fallen on a cupcake wrapper which apparently had been discarded in the parking lot near the doorway of a grocery store. The record was devoid of evidence indicating that the condition which caused Mrs. Tommerup's injury was anything other than an isolated incident. In *Tommerup,* we distinguished the "isolated incident" situation from circumstances where an alleged tortfeasor is charged with having actively created a foreseeable risk of danger in its course of business, stating:

> Appellants cite *Jasko v. F.W. Woolworth Co.,* 177 Colo. 418, 494 P.2d 839 (1972) in support of this argument. That case, however, is readily distinguished on its facts. In *Jasko,* the plaintiff was injured in the defendant's store when she slipped on a slice of pizza which was on the terrazzo floor. An associate manager of the store testified that 500–1000 individuals per day purchased one or more slices of pizza at the pizza counter. There were no chairs or tables by the counter.

Many customers stood in the aisle and ate the pizza from the wax paper sheets upon which they were served. When pizza was being consumed, porters "constantly" swept up debris from the floor.

In reversing an order granting defendant's motion for summary judgment, the Colorado Supreme Court held defendant's method of selling pizza was one which led inescapably to such mishaps as that of the plaintiff, and in such a situation conventional notice requirements (i.e. actual or construction knowledge of the *specific* condition) need not be met. The court there stated:

> "The practice of extensive selling of slices of pizza on wax paper to customers [to] consume it while standing creates the reasonable probability that food would drop to the floor. Food on a terrazzo floor will create a dangerous condition. In such a situation, notice to the proprietor of the specific item on the floor need not be shown...."

The court further stated:

> "The mere presence of a slick or slippery spot on a floor does not in and of itself establish negligence, for this condition may arise temporarily in any place of business. [Citation omitted.] Nor does proof of a slippery floor, without more, give rise to an inference that the proprietor had knowledge of the condition. [Citation omitted.] *But we are not dealing with an isolated incident.'"  Jasko v. F.W. Woolworth Co., supra,* 494 P.2d at 840.

■ The facts of the instant case more closely approximate those of *Jasko,* than those of *Tommerup.* Certainly, the trial court could not have concluded *as a matter of law* that the presence of the ice cream on the floor was merely an isolated incident. Hence, it did not err in denying Safeway's motion for summary judgment.

■ Safeway next complains that the trial court erroneously permitted the McDonalds to introduce certain opinion testi-

mony and expert testimony at trial. Safeway contends that the McDonalds' counsel improperly elicited "expert testimony" from James Anderson, the Safeway's store manager. This "expert testimony" consists of the following exchange:

COUNSEL: Wouldn't you agree with me, Mr. Anderson, that two hours is more than ample time to insure cleaning up a spill like an ice cream spill and preventing an accident like this?

MR. ANDERSON: Yes.

The question and answer were not objected to at trial and the objection cannot be raised for the first time on appeal. *See e.g., Sines v. Blaser*, 100 Idaho 50, 592 P.2d 1367 (1979). Moreover, I.R.C.P. 43(b)(4) provides in part:

**Rule 43(b)(4). Cross-examination of adverse party.**—A party may call an adverse party or an officer, director, or managing agent of a public or private corporation or of a partnership or association which is an adverse party, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, and the witness thus called may be contradicted and impeached by or on behalf of the adverse party also, and may be examined by his counsel only upon the subject matter of his examination in chief; provided, such adverse party may be cross-examined only as to matters which are peculiarly within the knowledge of the witness and which are not otherwise readily available. The testimony given by such witnesses may be rebutted by the party calling him for such examination by other evidence. . . .

■ The question posed by McDonalds' counsel properly elicited testimony tending to rebut Anderson's general line of testimony that the store had exercised due care.

■ Safeway further contends that the trial court erred in allowing the McDonalds to use John Merscher, a safety expert, as a rebuttal witness. The McDonalds had failed to disclose Merscher as an expert witness until just prior to the time of the trial, in violation of I.R.C.P. 26(b)(4), and the trial court had given the McDonalds the choice of not using Merscher in their case-in-chief or having the trial vacated. The McDonalds elected to proceed with trial and not to use Merscher in their case-in-chief. Safeway insists that when the McDonalds were permitted to call Merscher as a rebuttal witness, the sanctions imposed by the trial court for late disclosure were effectively side-stepped. However, prior to Merscher's testimony, Safeway's witnesses in the defense case-in-chief testified with regard to the matters upon which Merscher was called to rebut. Obvious possible inferences that could have been drawn from the testimony introduced by Safeway was that Safeway acted with due care with regard to safety in the store. Because the trial court precluded the McDonalds from introducing Merscher's testimony in their case-in-chief does not mean they were also precluded from presenting it on rebuttal. After Safeway described its "safety practices," Merscher testified that those practices were ineffective and improper. The trial court did not abuse its discretion in permitting that testimony. Safeway further asserts that since it did not call an expert in its case-in-chief, the McDonalds could not use an expert in rebuttal. We find neither authority nor reason in support of that proposition.

Safeway next maintains that the trial court erred in allowing McDonalds' counsel to conduct an "experiment" during closing argument. At the opening of closing argument, McDonalds' counsel unveiled a carton of Lucerne ice cream and placed a spoonful on a paper plate next to a thermometer and left it on counsel table in full view of the jury during his argument. When Safeway's counsel inquired as to what the McDonalds' counsel was doing, the McDonalds' counsel stated, "I'm conducting an experiment. I'm not sure what the results are going to be, but I think its proper argument." Safeway's counsel objected. The trial court overruled the objection, concluding that the "experiment" was an allowable, demonstrative argument.

Safeway submits that the "experiment" was not supported by the evidence, and that the use of the ice cream during closing argument should not have been allowed unless it was supported by evidence already admitted. Moreover, Safeway contends that the trial court should have, at a minimum, cautioned the jury that the "experiment" was not evidence and should not be given any consideration in reaching its decision. Clearly, the "experiment" was not proper evidence; however, that fact may not have been apparent to the jury. It is generally stated in 75 Am.Jur. *Trials* § 197 (1974) that:

> It appears to be entirely legitimate for counsel in addressing a jury to use, by way of illustration or elucidation, diagrams and maps or other visual aids not put in evidence, provided that the jury understands that they are employed merely for such purposes and are not evidence in any sense. However, the use of charts or diagrams by counsel has been held not permissible in the absence of adequate foundation in the form of material actually introduced into evidence.

In *Meissner v. Smith*, 94 Idaho 563, 494 P.2d 567 (1972), we approved the use of charts in closing argument so long as the record did not reflect any unfair, misleading or inflamatory tactics by counsel in the use of the chart. Research has revealed no case on point and counsel for both parties were unable to provide authority for their respective positions on this matter. Nonetheless, we conclude that the "experiment" should not have been allowed, in that experiments are admissible as evidence only during the evidentiary phase of the trial, when the opposing party has the opportunity for objection to foundation, cross-examination, and rebuttal. We strongly admonish counsel against such antics and would order a declaration of mis-trial but for the fact that a complete review of the record reflects that the effect and purpose of the experiment was only to establish that even a small chunk of ice cream requires an hour or two to fully melt at room temperature. Since two witnesses had testified to

that phenomenon and since Safeway did not dispute it, the error was harmless and cannot be said to have changed the result of the trial. Appellants have the burden to show prejudicial error and this they have failed to do. *Annau v. Schutte*, 96 Idaho 704, 535 P.2d 1095 (1975). Because we conclude that the result would have been the same had this "experiment" not taken place, we do not deem the error to be cause for reversal. *Viehweg v. Thompson*, 103 Idaho 265, 647 P.2d 311 (1982).

Finally, Safeway argues that the trial court erred in denying its motion for judgment notwithstanding the verdict or in the alternative, its motion for remittitur, or in the alternative to both of these, its motion for a new trial. We conclude that there is no merit to these assertions. The motion for judgment notwithstanding the verdict was premised on Safeway's contention that there was insufficient evidence upon which reasonable minds could conclude that Safeway had actual or constructive knowledge of the dangerous condition. In fact, the evidence submitted by the McDonalds and every legitimate inference to be drawn therefrom reflect that reasonable minds could, and in this case did, conclude that Safeway had such knowledge.

Safeway's motion for remittitur asserted that the damages awarded were grossly excessive and unreasonable in light of the evidence. Traditionally, a trial judge is accorded wide discretion in reviewing compensatory damage awards and in considering remittiturs. *Cheney v. Palos Verdes Investment Corp.*, 104 Idaho 897, 665 P.2d 661 (1983). Here, substantial evidence supported the jury's award of damages and there has been no showing of an abuse of discretion.

In support of its motion for a new trial, Safeway alleged the following specific errors:

(1) The ice cream experiment was improper;

(2) The jury verdict was excessive and unreasonable;

(3) The verdict was contrary to the evidence; and

(4) The trial court erred during the trial by (a) allowing Mr. Merscher to render opinion testimony on rebuttal, over objection; and (b) by giving erroneous instructions. We find no error in the challenged instructions, and the other asserted grounds in support of the new trial motion have been previously addressed in this opinion.

We therefore affirm the judgment.

Costs to respondents. No attorney fees.

DONALDSON, C.J., and SHEPARD, BAKES and BISTLINE, JJ., concur.