# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 45306

MICHAEL JOHNSON, )
)
    Plaintiff-Appellant, )
)
v. )
) Boise, June 2018 Term
)
WAL-MART STORES, INC., a Delaware )
corporation, doing business as Wal-Mart ) Filed: August 3, 2018
Super Center and Wal-Mart; WAL-MART )
ASSOCIATES, INC., a Delaware ) Karel A. Lehrman, Clerk
corporation; and WAL-MART STORE NO. )
2508, )
)
    Defendants-Respondents. )
_____ )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Honorable Jason D. Scott, District Judge.

The district court's grant of summary judgment is <u>affirmed</u>.

Jones & Swartz, PLLC, Boise, for appellant. Eric B. Swartz argued.

Hawley Troxell Ennis & Hawley, LLP, Boise, for respondents. Mindy M. Muller argued.

_____

BRODY, Justice

This is a premises liability case concerning whether a retailer is negligent for failing to warn a customer about potential spills. The case began when Michael Johnson suffered injuries after he slipped and fell on a liquid while walking in the housewares department of a Wal-Mart store. Johnson knew neither the source of the substance, nor how long it had been on the floor. Additionally, none of Wal-Mart's surveillance cameras captured the initial spill or Johnson's fall. Johnson filed a complaint alleging Wal-Mart, which has issued an internal statement to its employees that spills are largely responsible for slip/trip/fall accidents in its stores, was negligent for failing to warn him of the potential for spills. Johnson claims that the store's business practice of allowing patrons to carry liquids throughout the store should have put Wal-Mart on

1

notice that spills were foreseeable anywhere. Wal-Mart filed a motion for summary judgment based on its lack of actual or constructive notice of the spill. The district court granted summary judgment in favor of Wal-Mart. We now affirm.

## I. BACKGROUND

On June 30, 2015, Michael Johnson slipped on a liquid while walking in Wal-Mart Store 2508 on Overland Road in Boise. The aisle where Johnson slipped was in the housewares department near a display of trash cans. Johnson did not know the liquid's origin or how long it had been on the aisle floor. Wal-Mart's surveillance cameras did not capture either the spill or Johnson's slip.

Store practice permitted customers to carry liquids throughout the store—whether brought from outside or purchased in the store—without restriction. Wal-Mart did not warn its customers, including Johnson, of the danger they might encounter with spilled liquids while shopping. As a large retailer, Wal-Mart has institutional knowledge that spills occur and that those spills can lead to slip-and-fall accidents. Wal-Mart issued an internal message to employees acknowledging this, which stated, "Spills are largely responsible for slip/trip/fall accidents in the store. Slip/trip/fall accidents are included in the Big 3 accident focus and require additional focus to reduce these accident claims." However, Wal-Mart had no record of this particular spill and no record of any prior spills or accidents on the aisle where Johnson fell.

Johnson filed a complaint against Wal-Mart, alleging negligence and premises liability for failure to warn and for failure to keep the store in a safe condition. After engaging in discovery, Wal-Mart filed a motion for summary judgment which was granted. Johnson timely appealed.

## II. STANDARD OF REVIEW

This Court reviews a grant of summary judgment under the same standard of review the district court originally applied in its ruling. *Conner v. Hodges*, 157 Idaho 19, 23, 333 P.3d 130, 134 (2014) (citing *Arregui v. Gallegos-Main*, 153 Idaho 801, 804, 291 P.3d 1000, 1003 (2012)). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "When considering whether the evidence in the record shows that there is no genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences, in favor of the nonmoving party." *Liberty Bankers Life Ins. Co. v. Witherspoon, Kelley, Davenport &*

*Toole, P.S.*, 159 Idaho 679, 685, 365 P.3d 1033, 1039 (2016). The moving party has the burden of establishing there is no genuine issue of material fact. *Wattenbarger v. A.G. Edwards & Sons, Inc.*, 150 Idaho 308, 317, 246 P.3d 961, 970 (2010).

"If the moving party has demonstrated the absence of a question of material fact, the burden shifts to the nonmoving party to demonstrate an issue of material fact that will preclude summary judgment." *Id.* (citations omitted). The nonmoving party must present evidence contradicting that submitted by the movant, and which demonstrates a question of material fact. *Kiebert v. Goss*, 144 Idaho 225, 228, 159 P.3d 862, 865 (2007). However, "[a] mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Wright v. Ada Cnty.*, 160 Idaho 491, 495, 376 P.3d 58, 62 (2016) (citing *Finholt v. Cresto*, 143 Idaho 894, 897, 155 P.3d 695, 698 (2007)).

### III. ANALYSIS

**A. The district court did not err in granting summary judgment for Wal-Mart since no evidence demonstrates a genuine issue of material fact regarding Wal-Mart's liability for Johnson's fall.**

Johnson contends that the district court improperly granted summary judgment because Wal-Mart failed to warn him that its business practices gave rise to a continuous or foreseeable dangerous condition. Johnson primarily bases this claim on two undisputed facts: (a) Wal-Mart allows patrons to carry liquids throughout the store without restriction, whether brought from outside, purchased at the in-store McDonalds, or purchased from Wal-Mart; and (b) Wal-Mart informs its employees that "spills are largely responsible for slip/trip/fall accidents in the store," and has procedures in place to detect and clean up spills. Additionally, Johnson claims that since two employees were in the general vicinity of where he slipped, it is reasonable to assign constructive knowledge of this particular spill.

Wal-Mart responds that no evidence exists in this case to show a continuous or foreseeable dangerous condition, much less that it was or should have been aware of such a condition. The fact that Wal-Mart alerts employees that spills are largely responsible for slips in the store does not, it claims, lead to the conclusion that slips or spills are a recurring problem. Wal-Mart further contends that no evidence demonstrates Wal-Mart had actual or constructive notice of the spill on which Johnson slipped.

Negligence in Idaho consists of four elements: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal

3

connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Shea v. Kevic Corp.*, 156 Idaho 540, 548, 328 P.3d 520, 528 (2014) (citations omitted). Both parties agree that Johnson was an invitee in this case. A landowner owes a duty to an invitee "to warn of hidden or concealed dangers and to keep the land in a reasonably safe condition." *Id.* (quoting *Peterson v. Romine*, 131 Idaho 537, 540, 960 P.2d 1266, 1269 (1998)). An invitee must show "that the owner or occupier knew, or by the exercise of reasonable care should have known, of the existence of the dangerous condition." *All v. Smith's Mgmt. Corp.*, 109 Idaho 479, 481, 708 P.2d 884, 886 (1985) (citations omitted).

The dangerous condition in premises liability can take one of two forms: (1) isolated or nonrecurring, or (2) continuing or recurring. *Shea*, 156 Idaho at 548, 328 P.3d at 528. "For a nonrecurring or isolated incident, the invitee must show actual or constructive notice of the specific condition." *Id.* (citations omitted). Constructive notice is simply knowledge of a condition that the exercise of reasonable care would have revealed. *Smith's Mgmt. Corp.*, 109 Idaho at 481, 708 P.2d at 886.

The prototypical "isolated" condition case in Idaho jurisprudence is *Tommerup v. Albertson's, Inc.*, 101 Idaho 1, 607 P.2d 1055 (1980), *superseded by statute on other grounds as stated in Harrison v. Taylor*, 115 Idaho 588, 591, 768 P.2d 1321, 1324 (1989). The plaintiff in *Tommerup* slipped and fell on a discarded cupcake wrapper as she exited an Albertson's store in Twin Falls. *Id.* at 2, 607 P.2d at 1056. Albertson's sold bakery goods and did not keep trash containers by its doorways. *Id.* However, "[t]here was no direct evidence as to who deposited the cupcake wrapper near the door." *Id.* Additionally, store employees were directed to "pick up paper and debris outside the store as they saw it," though the store had only one scheduled inspection and cleanup between midnight and six o'clock a.m. *Id.* The court determined that the record was "devoid of evidence indicating the condition which caused appellant's injury to have been other than an isolated incident." *Id.* at 4, 607 P.2d at 1058.

An invitee alleging a "continuous or recurring" condition, however, need not demonstrate actual or constructive knowledge of the *specific* condition. *Smith's Mgmt. Corp.*, 109 Idaho at 481, 708 P.2d at 886. Rather, the invitee must show that the landowner's operating methods "are such that dangerous conditions are continuous or easily foreseeable." *Shea*, 156 Idaho at 548, 328 P.3d at 528. However, "[e]ven with a recurring or continuing condition, the invitee must

4

show that the landowner had actual or constructive knowledge of the dangerous condition." *Id.* This Court has explained:

> In summary, the invitee must show actual or constructive knowledge on behalf of the landowner to establish a prima facie negligence claim regardless of the nature of the condition. The distinction between an isolated and continuing condition does not eliminate the invitee's burden to establish the landowner's knowledge. In some cases it may be easier for the invitee to show knowledge when the alleged condition is recurring or continuous, but an allegation of a continuous condition does not extinguish the invitee's burden simply because the dangerous condition is regularly occurring. The invitee still must show that the landowner knew or should have known his operating methods caused or were likely to cause a dangerous condition.

*Id.* at 548–49.

This Court has decided a number of cases falling under the "operating methods" theory of liability. In *McDonald v. Safeway Stores, Inc.*, 109 Idaho 305, 307, 707 P.2d 416, 418 (1985), Safeway handed out ice cream to customers, "including infants," on a day with "abnormally large crowds." *Id.* The plaintiff in that case slipped on an ice-cream-colored substance that had been on the ground long enough to have melted. *Id.* at 306, 707 P.2d at 417. This Court affirmed the denial of summary judgment based on the district court's conclusion that whether the presence of ice cream on the floor was an isolated incident was a factual question under those circumstances. *Id.* at 308, 707 P.2d at 419.

Four days later, this Court decided *Smith's Management*. We concluded that a store's deteriorating parking lot—with potholes observed "in the entire parking lot" and the assistant manager aware of multiple holes near one of the store's entrances—created an issue of material fact that should have been submitted to a jury. 109 Idaho at 480–82, 708 P.2d at 885–87. We reversed the trial court's directed verdict for the store, which was based on the plaintiff's inability to provide evidence of actual or constructive notice of the specific offending pothole, determining instead "that the plaintiff presented sufficient evidence to establish that the dangerous condition of the parking lot was a continuous and foreseeable consequence of [the store's] operating methods." *Id.* at 482, 708 P.2d at 887.

More recently, we decided *Shea v. Kevic Corp*. There, a car wash patron sued for negligence after slipping on ice near the car wash's exit. 156 Idaho at 543, 328 P.3d at 523. The employees were instructed to de-ice the car wash exit, since dripping cars in cold temperatures can cause ice buildup. *Id.* at 550, 328 P.3d at 530. This Court determined that there were genuine

issues of material fact as to whether the car wash's operating method caused the recurring—and on that day, apparently unaddressed—dangerous condition at the car wash's exit. *Id.*

The evidence in this case is largely uncontested, and construed in Johnson's favor shows that: (1) Wal-Mart sells liquids and allows them in the store; (2) Wal-Mart has policies in place for employees to police certain high-traffic areas looking for spills; (3) Wal-Mart has recognized that spills are largely responsible for slip/trip/fall accidents in its stores; and (4) Johnson slipped in an aisle near a high-traffic area while employees were in the general vicinity.

Importantly, the district court analyzed Johnson's claim through both the "isolated" and "operating method" lenses, and found the evidentiary record lacking in support of either claim. We agree with the district court's well-reasoned decision. First, Johnson's evidence is insufficient to place this case into the "operating method" line of cases. Wal-Mart's missive to employees that spills are largely responsible for customers' slips in the store does not, without more, demonstrate a recurring or continuing condition caused by its operating method—much less *Shea*'s requirement that Wal-Mart knew of such a condition. *Id.* at 548, 328 P.3d at 528. The internal message to Wal-Mart employees could just as easily be rewritten to say, "When a customer slips in the store, a spill probably caused it." The fact that liquid spills might be the primary cause of people slipping inside a large retail store is unsurprising. Johnson's contention that Wal-Mart "knew that spills were a big problem at Store 2508" merely restates a general proposition likely applicable to every large retail store in Idaho. The evidence Johnson presented of the circumstances of his slip and fall—an unidentified liquid on the ground for an unknown time in a less-frequently-traveled aisle where there is no obvious source of liquids—simply falls short of triggering a duty on Wal-Mart's part.

The instant case is more like the isolated condition in *Tommerup* than our "operating method" cases. While a pothole may form in almost any parking lot, children perhaps often drop wet or sticky items on the ground, and ice forms whenever water reaches too cold a temperature, those cases all had something more than the particular hazard on that particular day (knowledge that potholes saturated the parking lot, ice cream sitting long enough to melt after being handed out to children, instructions to de-ice a specific area with known ice buildup). As with *Tommerup*, the record here is "devoid of evidence indicating the condition which caused appellant's injury to have been other than an isolated incident." 101 Idaho at 4, 607 P.2d at 1058. No doubt spills occur in Wal-Mart, just as litter existed at the threshold of Albertson's in

6

*Tommerup*. However, as the district court stated in its memorandum decision, "[t]he mere presence of a slick or slippery substance on a floor is a condition that may arise temporarily in any public place of business," and thus "something more is needed" to assign liability. *Carlyle v. Safeway Stores, Inc.*, 896 P.2d 750, 753 (Wash. Ct. App. 1995).

This Court agrees, and that "something more" is missing in this case. To hold otherwise would mean every store that deals in liquids and has a cleanup policy recognizing the dangerousness of spills would be liable for every spill anywhere in the store almost instantly. This is not the law in Idaho. Johnson has failed to provide more than a scintilla of evidence for his contention that Wal-Mart's allowance of liquids in its store, combined with the acknowledgement that spills are a potential danger to customers, generally imputes knowledge of a recurring or continuing dangerous condition.

On the isolated condition theory of liability, Johnson also contends that evidence of the spill's location, as well as two employees' proximity to it, created a genuine issue of material fact as to constructive notice of this specific spill. Constructive notice is simply knowledge of a condition that the exercise of reasonable care would have revealed. *Smith's Mgmt. Corp.*, 109 Idaho at 481, 708 P.2d at 886. Johnson has failed to provide any evidence that, exercising reasonable care, Wal-Mart should have known about this spill. As the district court noted in its memorandum decision, "Walmart has no record of any prior spills [in this aisle], nor of any prior slip-and-fall accidents there." Additionally, Johnson presented no evidence as to how much time had passed since this spill occurred—in an aisle without any known spill history. Thus, the only evidence potentially bearing on constructive knowledge as to this particular spill is the fact that two employees were in that general area of the store, and that the spill was close to the high-traffic area that a Wal-Mart employee regularly checks for spills. This evidence fails to create an issue of material fact regarding Wal-Mart's constructive notice. The district court did not err in determining that the evidence provided was insufficient to create an issue of material fact that Wal-Mart had constructive knowledge of the spill.

### IV. CONCLUSION

For the foregoing reasons, the Court affirms the district court's summary judgment grant in favor of Wal-Mart. Costs to Respondent.

Chief Justice BURDICK, Justices HORTON, BEVAN, and Justice Pro Tem LORELLO CONCUR.